Good morning, Your Honors. May it please the Court, Lisa Pickering, representing the petitioners, the Babayan family. Pull that mic closer to you so we can hear you, yes. Sorry, Your Honor, too short for the microphone. I'd request to reserve two minutes of my time for rebuttal. I'll try to keep an eye on the clock. The Board of Immigration Appeals and the immigration judge erred in denying the Babayan family's applications for asylum, withholding, and torture in 2003, and erred in denying those applications again in 2015. Specifically, the board and immigration judge erred in denying or failing to appropriately consider relief under the Convention Against Torture in both 2003 and 2015. This case was remanded from the Ninth Circuit prior to a review of the 2003 decision, and the Babayans were denied appellate review of that decision. We are renewing those arguments at present. Irrespective of any adverse credibility determinations, CAT is a non-discretionary decision. Based upon the documentary evidence in the record, the petitioners clearly established they are ethnically Armenian Christians. The original of the church letter confirming the marriage was provided to the department and considered by the judge. It is not disputed that the documentary evidence submitted in 2003 and 2009 indicate Christians are persecuted on account of their religion in Iran and have a heightened risk of arrest and torture by the Iranian government. The board and judge erred in failing to consider the... And remind me of what the source of that was. Is that State Department country condition? Yes, sir. There were also additional news articles and reports, but primarily the State We have a case that I know you're probably familiar with. It's Najambadi v. Holder, also involving an Iranian family, an Iranian woman. And there, she had been here for about a decade, but she was also part of a disfavored group in Iran. But the reason she was unable to The petitioners did make an argument that they had previously been harmed. I know that there was adverse credibility determinations, but we would also say that those determinations made by the judge are erroneous in light of the State Department reports. And I believe that using a disfavored group analysis, they would show that our petitioners had left the country illegally, which is specifically mentioned in the State Department report and in matter of GA as a factor that would lead them to be questioned more intensely upon their return or deportation to Iran. And so that would be a factor. And the factors listed by the Board of Appeals in matter of GA include persons who exited the country illegally, persons who are identifiable as a member of a minority religion, and persons who have a lengthy absence from Iran. So in the case that you cited, she said she did not have a fear of returning to Iran, whereas our petitioners have said they left under a fear, they left illegally, and they continued to have a fear. Help me understand why you believe the BIA erred in its time-innocent analysis? The timeliness? Yeah. The asylum issue. Oh, the one-year issue. Yes, sorry, Your Honor. The one-year issue was tied to the adverse credibility finding, and I think that the credibility determination was erroneous for a few reasons. The statements made by the petitioners in testimony are actually confirmed by the State Department report in that he, for one thing, regarding the date of the prison, what date he, the trial, took place, two places on that document say that it was on April 11th. One place says it was April the 10th. Mr. Babayan didn't even have while in Evin prison, which is noted as one of the most notorious prisons in Iran. It's in the State Department report as being notorious for routinely torturing people. So his explanation that it was just a typographical error, and then he relied upon that error, is plausible. I think that's true, given what the country reports have provided and the other information. The difficulty we have is the doesn't let us re-weigh or look at substantial evidence in terms of the credibility findings on that one-year determination. Do you have some means by which you think that we're not bound by that statute? Well, I think that the credibility determination is reviewable because it was how they denied the asylum, because the immigration judge in the board said even without the one-year issue, we would still deny the asylum on credibility. So if the credibility determination is found to be erroneous, then other evidence would support the conclusion they should be eligible for asylum. How would you have us disturb the credibility assessment? I mean, we weren't there. We didn't hear the questions and answers and so forth. I think that the State Department report and the documentary evidence, for example, the children provided, which shows that they had an English language assessment in May of 2000, would indicate that they had recently entered the United States, and that confirms their testimony or the parents' testimony that they entered in April of 2000. That's a business record. It wasn't made in anticipation of immigration litigation. It was these parents came to America and enrolled their children in school. So that is, I would think, when the judge was looking at the case, you know, she does determine demeanor. She does have the opportunity to do that in person. But the State Department report does confirm what he testified to that the judge found implausible. That mail is searched. It wasn't safe to mail documents. That the prison takes place without lawyers. That it is possible to bribe government officials to get people out of prison. All of those things that the judge found implausible are actually in the record in the State Department report and confirmed by our own government. And I would reserve my time. Thank you. Good morning, Your Honor. May it please the Court. Eric Anderson representing the Attorney General. Mr. It resulted in orders of removal against the family. This Court should deny the petition for review in three steps. First, that the conclusion that he failed to establish, that Mr. Babayan failed to establish that he applied for asylum within a year of arriving was based on a resolution of disputed historical facts, which is outside this Court's jurisdiction. Second, that Mr. Babayan's evolving conflicting and changing explanations regarding the March 20, 1999, alleged incident involving his neighbor, Homa, provide substantial evidence supporting the adverse credibility finding on which the Board denied withholding of removal. Certainly nothing that compels a contrary finding. And finally, on the issue of Kat, Mr. Babayan did not present that as an issue to be resolved before the evidence in the record reflects that Christians are a recognized minority group in Iran. The article of Mr. Babayan presented involved problems or demonstrated problems for people who convert from Islam and are alleged apostates. That doesn't apply to Mr. Babayan, who was born an Armenian Christian in Iran. And in any event, the record evidence doesn't compel a finding that he would be singled out for tortured. So to address each of these in turn, the first fact we know about Mr. Babayan is that he filed for asylum in January 2000. That's a certain fact, January 24, 2000. He had to demonstrate by clear and convincing evidence that he applied or that he had arrived before January 24, 1999. His testimony about his entry was vague. He had no documents concerning his entry. His documents showing that he was present in the United States in August, October of 1999 failed to show when he initially entered. And the immigration judge and board evaluated the evidence before it and resolved disputed historical facts against him. And that is outside the court's jurisdiction. To move on to the adverse credibility finding on which the withholding of removal was denied. In the opening argument, Mr. Babayan mentioned and discussed the April 10th or the documentation concerning the April 10th trial. He did not discuss the numerous problems regarding his own testimony about the events involving his neighbor Homa, which is to say his written document said on the same day he presented her gifts and she proposed marriage to him. He had two further contacts with her after that point involving payment for a car he was failed to discuss these. He initially said no, he had no further contact after she proposed to him. He had no further contact until the trial. When it was pointed out to him that his statement had said otherwise, he then reaffirmed the statement. But that was that presented its own problems because that had him contacting Homa at a time where he was So after it comes up on appeal and then gets remanded, he provides a further explanation in which he said, well actually, the story had not been explained to me. Really what had happened was he moved the dates on some of the things so they happened before the marriage proposal. And he said, actually, and my wife was the one who contacted We know that's not true because at his asylum interview, there were 15 occasions in which the asylum officer reviewed the accounts to him. He changed it and the change was noted and circled on the asylum application. But he made not one change to the account. So there is substantial evidence and the record doesn't compel a rejection of the adverse reports by the State Department. I mean, the irony of the government's position here is that the country we're dealing with is probably at the top of the government's list in terms of countries who are repressive and who are state sponsors of terrorism all over the Middle East and other parts of the world. So your brief, it seemed to me, soft pedaled that. I mean, we're dealing with the country that the government puts at the top of bad actors. That's right. And that kind of government does not by itself establish an applicant's eligibility for relief or protection from removal, as the Najm-e-Badi case notes. Again, as far as I read the documents Mr. Babayan presented to the immigration judge, they talked about problems for evangelicals, problems for apostates from Islam, and they did not discuss the longstanding Armenian Christian community that exists there. I mean, the very fact that he has a church letter establishing his religion functions in Tehran. Unless there are any further questions, we rest on our brief and ask for the petition for review to be dismissed in part and denied in part. Thank you. Just going back to the Convention Against Torture claim, we just wanted to emphasize that that doesn't, is not affected by any adverse credibility finding. If that is the court's decision or if that is not reviewable by this body, then we believe that the Babayan family would be tortured upon their return. Remind us of what you believe are the most compelling pieces of evidence that support that conclusion. In the Certified Administrative Record at 308 is the State Department report from 2003, which shows that travel is required to leave, that social media is monitored, and that persons are questioned, that returning residents are questioned upon their return. When taken in conjunction with matter of GA, which says that persons who are questioned by authorities upon their return are routinely imprisoned and tortured, I believe that that supports a finding that CAT would be appropriate in this case if the adverse credibility determination is not reviewable. I'm totally sympathetic, you know, to your clients given their situation, but the question is can they be distinguished in any way from anyone else who is a Christian who escaped Iran? Because they would be returning as deportees. They would be returning under, brought back by the government of the United States. They would not be returning voluntarily. They would come to the attention of the Iranian government because they did leave illegally, they didn't have any passports, they weren't, didn't receive permission to leave, and because of their now lengthy absence from the country, and because they came to the United States as opposed to a country such as France or Germany, which may be more friendly to the Iranian regime. There's no further questions I would yield. Thank you. Thank you both for your argument this morning. The buy-in versus bar is submitted.
judges: Parker, Farris, McKeown